**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **RACHEL ZARONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 26-CV-544-MTS** |
| | ) | |
| **BOOKS-A-MILLION INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Before the Court is Plaintiff's Motion to Remand and Brief in Support. (Docket No. 9). After considering the parties' briefing on the matter and the applicable caselaw, the Court hereby **DENIES** Plaintiff's Motion.

## Background and Procedural History

Plaintiff Rachel Zarones ("Plaintiff") filed her Petition in Tulsa County District Court on July 31, 2026, and then filed her First Amended Petition on September 1, 2026. (Docket Nos. 2-2; 9-1; 10-4). Her claims involve alleged violations of the Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, §§ 751-65 ("OCPA"), and allegations of fraud. (Docket Nos. 9-1 at 4-6; 10-4 at 4-6). Plaintiff contends that Defendant Books-A-Million Inc. ("Defendant") fraudulently misled consumers by "intentionally charging [her] and other similarly situated consumers a fee, which was disguised as a legally required sales tax." (Docket Nos. 9-1 at 4; 10-4 at 4). Specifically, Plaintiff asserts that when she purchased an embroidery kit from Defendant's store in Broken Arrow, Oklahoma, on July 30, 2026, she was charged a hidden fee at the point of sale, which was depicted on her receipt as part of the sales tax charged by Defendant. (Docket Nos. 9-1 at 2-3; 10-4 at 2-3).

On September 2, 2026, Defendant removed the case to this Court. (Docket No. 2). On September 14, 2026, Plaintiff filed her Motion to Remand and Brief in Support. (Docket No. 9). That same day, Defendant filed its Amended Notice of Removal. (Docket No. 10). Defendant filed its Response in Opposition to Plaintiff's Motion to Remand (Docket No. 14) on October 5, 2026, and Plaintiff filed her Reply in Support of Motion to Remand (Docket No. 15) on October 13, 2026. As such, Plaintiff's Motion is now ripe for review.

**Legal Standard**

To establish subject matter jurisdiction on the basis of diversity, 28 U.S.C. § 1332(a) requires complete diversity among the parties and that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs[.]" 28 U.S.C. § 1332(a)(1). When a case is removed from state court, 28 U.S.C. § 1446(a) requires that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). If a plaintiff or the court challenges the amount, "[e]vidence establishing the amount is required by [28 U.S.C.] § 1446(c)(2)(B)[.]" *Id.* In other words, "the defendant must affirmatively establish jurisdiction by proving [by a preponderance of the evidence] jurisdictional *facts* that ma[k]e it *possible* that $75,000" is in controversy. *McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008) (emphasis in original). When considering whether the amount in controversy requirement is met, a court "may rely on [its] 'judicial experience and common sense.'" *Cagle v. State Farm Fire & Cas. Co.*, No. 25-cv-351-GLJ, 2025 WL 3488279, at *1 (E.D. Okla. Dec. 4, 2025), quoting *Roe v. Michelin N.A., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010).

## Discussion

Plaintiff raises two arguments to support remand of this matter to state court. First, she contends that the Notice of Removal is defective. (Docket No. 9 at 1). Second, she asserts Defendant has failed to prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.00. *Id.* at 2. The Court addresses each argument in turn.

### A. Defective Notice of Removal

According to Plaintiff, the Notice of Removal is procedurally defective because Defendant omitted a copy of the First Amended Petition, instead attaching the original Petition. (Docket No. 9 at 1). While the original Petition sought damages exceeding $75,000.00, Plaintiff contends that the First Amended Petition demands a sum below the jurisdictional threshold, thereby rendering removal improper and necessitating remand. (Docket No. 15 at 2-5). Defendant counters that it "attached to its notice of removal every pleading it had received and every pleading the state court record reflected as served." (Docket No. 14 at 3). As such, Defendant claims it had every right to rely upon the original Petition when filing the Notice of Removal. Moreover, Defendant maintains that the First Amended Petition's omission from the Notice of Removal "is at most a curable procedural irregularity cured by filing an Amended Notice of Removal . . . , and is not a ground for remand." *Id.*

While the Court finds Defendant's assertions regarding service somewhat tenuous, Plaintiff has failed to demonstrate any prejudice, nor has she cited any authority justifying remand on this basis. In fact, Defendant filed its Amended Notice of Removal on September 14, 2026 (Docket No. 10), to which it attached Plaintiff's First Amended Petition (Docket No. 10-4). This satisfies the requirement under 28 U.S.C. § 1446(a). *See Lundahl v. American Bankers Ins. Co. of Fla.*, 610 F. App'x 734, 736 (10th Cir. 2015) (finding defendant cured any procedural defect in its

notice of removal to which it attached the plaintiff's original complaint, when it supplemented the notice to include the plaintiff's amended complaint), citing *Countryman v. Farmers Ins. Exch.*, 639 F.3d 1270, 1272-73 (10th Cir. 2011) (finding defendants' failure to include all state court pleadings with the notice of removal, "either before or after expiration of the thirty-day removal period[,]" did not warrant remand because it was "an inadvertent, minor procedural defect that was curable" and there was no prejudice to plaintiff).

**B. Jurisdictional Amount in Controversy**

Plaintiff also contends that the amount in controversy "is at most $60,687.61" and that Defendant "fills the remaining $14,312.39 with an unsupported prediction about future fees, which cannot carry its burden." (Docket No. 15 at 2). She goes so far as to include a chart which specifically enumerates her claimed damages, including actual loss and restitution ($0.11), a civil penalty under the OCPA for Counts I-III ($2,000.00 x 3 = 6,000.00), punitive damages ($50,000.00), and incurred attorney fees ($4,687.50). *Id.* at 9. Defendant asserts that the relief sought by Plaintiff in the First Amended Petition, including injunctive relief, undefined compensatory damages, restitution, statutory damages under the OCPA, punitive damages of $50,000.00, and reasonable attorney fees under the OCPA, "easily exceeds $75,000.00 in controversy." (Docket No. 14 at 4-5). The Court agrees with Defendant.

The Tenth Circuit Court of Appeals has held that "[t]he proponent of federal jurisdiction must prove contested *facts*[.] . . . But once those underlying facts are proven, a defendant . . . is entitled to stay in federal court unless it is 'legally certain' that less than $75,000 is at stake." *McPhail*, 529 F.3d at 954. Thus, "[i]f the amount is uncertain then there is potential controversy, which is to say that at least $75,000 is in controversy in the case." *Id.* Here, a valuation of damages

associated with Plaintiff's fraud claim is noticeably absent and the amount of punitive damages and attorney fees are far from certain.

In the First Amended Petition, Plaintiff sets forth four separate and distinct causes of action, including Count IV wherein she alleges that "Books-A-Million engages in a scheme to defraud its customers by disguising unauthorized fees as taxes." (Docket Nos. 9-1 at 6; 10-4 at 6). She further states that she is entitled to an award of both compensatory and punitive damages for the alleged fraud. *Id.* at 7. While Plaintiff expressly caps her request for punitive damages at $50,000.00, she fails to specify the amount of compensatory damages she seeks for the alleged fraud. Under Oklahoma law, "[o]ne who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Okla. Stat. tit. 76 § 2. Because actual fraud damages are unliquidated, a jury is free to award any amount deemed appropriate by the evidence at trial. Thus, this open-ended compensatory claim alone undermines Plaintiff's assertion that her damages are strictly capped below the jurisdictional floor.

Moreover, Plaintiff is also seeking punitive damages for Defendant's "scheme to defraud its customers by disguising unauthorized fees and taxes." (Docket Nos. 9-1 at 5; 10-4 at 5). Courts have held that when "both actual and punitive damages are recoverable, punitive damages are properly considered in determining whether the jurisdictional amount has been satisfied." *Flowers v. EZPawn Okla., Inc.*, 307 F. Supp. 2d 1191, 1198 (N.D. Okla. 2004) (citation omitted). Here, Plaintiff's claim that Defendant engaged in an intentional scheme triggers the application of Okla. Stat. tit. 23, § 9.1(C), which provides the jury with the option of awarding "punitive damages in an amount not to exceed the greatest of Five Hundred Thousand Dollars ($500,000.00) [or] twice the amount of actual damages awarded." While Plaintiff only requests $50,000.00 in punitive

damages, the statute is clear that a jury can award any amount of punitive damages within the confines of the statute.

Furthermore, Plaintiff's argument that an estimate of future attorney fees cannot be applied to the amount in controversy is unpersuasive. Plaintiff contends she has already incurred $4,687.50 in fees, which represents "the groundwork for the entire case." (Docket No. 15 at 8). In her estimation, "nothing remains but to await Books-A-Million's [discovery] responses and (1) move for summary judgment; or (2) voluntarily dismiss the case if [Defendant] is able to explain why its hidden fees and inflated sales tax calculations are not illegal . . ." *Id.* Based on this optimized trajectory, Plaintiff posits that it "will require approximately 10 hours of attorney time, or about $3,750" to complete this litigation. *Id.*

As noted by the Tenth Circuit, the United States Supreme Court "has long held that when a statute permits the recovery of attorney's fees a reasonable estimate may be used in calculating the necessary jurisdictional amount in a removal proceeding based upon diversity of citizenship." *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998), citing *Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933). Relying on judicial experience and common sense, the Court finds Plaintiff's attempt to artificially minimize remaining attorney hours is unrealistic. Plaintiff's calculations mistakenly assume a purely reactive defense and ignore that Defendant will undoubtedly propound its own written discovery, depose Plaintiff, litigate discovery disputes, and file a dispositive motion. Moreover, Plaintiff will be required to review and analyze Defendant's document production. In short, the Court estimates that these remaining attorney fees will easily exceed Plaintiff's calculated deficit of $14,312.39, which is the amount necessary to meet the jurisdictional threshold.

Based upon the foregoing, the Court finds that Defendant has met its burden and presented sufficient facts in support of the amount in controversy exceeding the jurisdictional requirement. Accordingly, the Court concludes that it is not legally certain that the amount in controversy is less than the jurisdictional amount of $75,000.00.

## Conclusion

For the reasons set forth herein, Plaintiff's Motion to Remand and Brief in Support (Docket No. 9) is hereby **DENIED.**

**IT IS SO ORDERED** this 22nd day of October, 2026.

MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT